IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Ismael R. Cruz, | ) | Case No. 8:13-00658-DCN-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Michael McCall, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Paula Cruz, | ) | |
| | ) | |
| Interested Party. | ) | |

This matter is before the Court on Respondent's motion for summary judgment [Doc. 22] and second motion for summary judgment [Doc. 57]. Petitioner is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on March 8, 2013.[1] [Doc. 1.] On August 16, 2013, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 21, 22.] On August 19, 2013, the Court filed an Order pursuant to

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on March 8, 2013. [Doc. 1-1 at 2 (envelope marked as received by prison mailroom on March 8, 2013).] When Petitioner filed this action he was proceeding pro se; on December 3, 2014, Jeremy Adam Thompson filed a notice of appearance on behalf of Petitioner. [Doc. 45.]

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion.  [Doc. 23.]  Petitioner filed a response in opposition on October 8, 2013. [Doc. 27.]  On October 17, 2013, Petitioner filed additional attachments to his response in opposition.  [Doc. 33.]  On January 10, 2014, this Court issued an Order to show cause, requiring Respondent to file a response detailing whether staying this action until Petitioner's second PCR action was concluded would be appropriate [Doc. 34], and on January 22, 2014, this Court issued an Order staying this action [Doc. 38].  The stay was lifted on April 14, 2015.  [Doc. 53.]  Respondent filed a second motion for summary judgment and an amended return and memorandum on May 4, 2015.  [Doc. 57.] Petitioner filed a response in opposition on May 28, 2015.  [Doc. 61.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motions for summary judgment be granted.

## BACKGROUND

Petitioner is incarcerated in the Lee Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Greenville County.  [Doc. 1 at 1.]  Petitioner was indicted in 2008 for two counts of Criminal Sexual Conduct ("CSC") with a Minor First Degree, Incest, and CSC with a Minor 2nd Degree.  [Supp. App. 1–10.[2]]  On April 9, 2008, Petitioner pled guilty in front of the Honorable John C. Few.  [App. 3–37.] Petitioner was represented at the plea by Richard Warder ("Warder").  [*Id.*]  Petitioner was sentenced to 20 years for CSC with a Minor

---

[2]The Appendix can be found at Docket Entry Number 21-8 and the Supplemental Appendix can be found at Docket Entry Number 21-9.

Second Degree and 25 years for one count of CSC with a Minor First Degree, set to run concurrent.  [App. 37.]  Petitioner was sentenced to 5 years for Incest and 25 years for the second count of CSC with a Minor First Degree, set to run consecutive.  [*Id.*]  Therefore, Petitioner received an aggregate 55-year sentence.  [*Id.*; Doc. 1 at 1.]

**PCR Proceedings**

### *First PCR Application*

On October 9, 2009, Petitioner filed a pro se application for post-conviction relief ("PCR"), in which he alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

> Court's Abuse of Discretion in Sentencing:
>
> (a) Sentencing Judge failed to fashion a sentence appropriate to the facts and circumstances of Applicant's case. Applicant is a 37 (thirty-seven) year old Mexican Immigrant who has lived in America for 23 (twenty-three) years.  Prior to the present convictions, Applicant has never been in trouble and has worked his entire life supporting seven children and a wife.  He has contributed greatly to his particular community and has paid taxes, never sought or received unnecessary government assistance, etc . . .   The sentencing Court did abuse it's discretion in failing to issue a reasonable sentence in accordance with the South Carolina and United States Constitutions.
>
> Ineffective Assistance of Counsel:
>
> (a) Defense Counsel promised Applicant that he would not receive a sentence (total) of more than 10 (ten) years—yet did not secure such agreement from the solicitor's office prior to the plea nor withdrawed the plea when the sentence was issued.
>
> (b) Defense Counsel failed to conduct any investigation into the facts and circumstances surrounding the charges against Applicant.  He did not meaningfully communicate with Applicant (Applicant is a Mexican Immigrant who speaks

minimal english—counsel speaks no spanish and never employed the services of a translator at any time prior to Applicant's plea.).

(c) Defense Counsel failed to inform Applicant of his right to appeal his sentence to the Court of Appeals, ensure Applicant understood such right, and assist Applicant in timely filing a proper Notice of Appeal.

[App. 39–48.]  The State filed a return, dated December 29, 2009.  [App. 49–52.]

A hearing was held on November 16, 2010, at which Petitioner was represented by Caroline Horlbeck.[3]   [App. 55–75.]  By Order dated January 14, 2011, and filed January 28, 2011, the PCR court denied and dismissed the PCR application with prejudice.  [App. 76–82.]  A notice of appeal was timely filed.

Wanda H. Carter of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a petition for writ of certiorari, dated October 24, 2011, in the Supreme Court of South Carolina.  The Petition asserted the following as the sole issue presented:

Trial counsel erred in failing to object to and move for the withdrawal of petitioner's pleas after the solicitor recommended significant prison time at the plea sentencing because this was a violation of the plea agreement which included a promise that no sentencing recommendation would be made by the solicitor in the case

[Doc. 21-1.]  The court denied the petition on November 14, 2012 [Doc. 21-3] and remitted the matter to the lower court on December 3, 2012 [Doc. 21-4].

---

[3]In his Petition, Petitioner identifies Lawrence Crane as his PCR attorney [Doc. 1]; however, a review of the record demonstrates that Caroline Horlbeck represented Petitioner at the PCR hearing [*See, e.g.*, App. 55–75 (transcript of PCR hearing); Doc. 21-5 at 5 (Petitioner's second PCR application, in which Petitioner identifies Caroline Horlbeck as his attorney in his first PCR action).]

4

***Second PCR Application***

Petitioner filed a second pro se PCR application on March 7, 2013 [Doc. 21-5], in which he alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

> [1.] Ineffective Assistance of (plea) counsel pursuant to Rule 407 SCACR
>
>   (a) Counsel at and Before Plea violated SCACR 407 § 1.1 thru 1.4
>
> [2.] Breach of Plea Agreement
>
>   (b) Prosecutor in violation of Case Law and SCACR
>
> [3.] I.A.C. P.C.R. Counsel
>
>   (c) P.C.R. Counsel failed his duty by SCACR mandates

[Doc. 21-5.]

The State filed a return and motion to dismiss, dated August 5, 2013. [Doc. 36-1.] On August 21, 2013, the PCR court filed a conditional order of dismissal, finding Petitioner's second PCR application was subject to summary dismissal because (1) the application was filed outside the one-year statute of limitations applicable to PCR filed in South Carolina courts and (2) the application was successive to Petitioner's first PCR application. [*Id.*] Petitioner filed a response in opposition to the motion to dismiss and the conditional order of dismissal on September 5, 2013. [Doc. 36-2.].

On December 9, 2013, the PCR court filed a final order of dismissal. [Doc. 36-3.] Upon reviewing Petitioner's responses to the conditional order and Petitioner's original pleadings, the court determined Petitioner had not demonstrated a sufficient reason why

the conditional order should not become final. [*Id.* at 2.] Accordingly, the PCR court denied Petitioner's second PCR application and dismissed the action with prejudice. [*Id.* at 3.]

Petitioner filed a motion to alter/amend pursuant to Rule 59(e), SCRCP, on December 30, 2013. [Doc. 36-4.] The State filed a return, dated January 7, 2014. [Doc. 36-5.] An Order denying Petitioner's motion was filed on January 14, 2014. [Doc. 43-1.] Petitioner did not appeal.

**Petition for Writ of Habeas Corpus**

As previously stated, Petitioner filed the Petition on March 8, 2013, while his second PCR application was pending. [Doc. 1.] In his Petition, Petitioner raises the following grounds for relief, quoted substantially verbatim:

> **Ground One**:      Ineffective Assistance of Plea Counsel
>
> *Supporting Facts*:  When Mr. Warders spoke to [Petitioner], he never had an interpreter present, and he spoke no Spanish. He told [Petitioner], that [Petitioner] would probably be sentenced to around 15 years, But [Petitioner] got twice that Plus more. This is extremely too much, [Petitioner] would have took a trial and not plead, had [he] known this. [Petitioner] should have been sentenced pursuant to spree statute.
>
> **Ground Two**:      Abuse of discretion in sentencing
>
> *Supporting Facts*:  The Prosecution made an inference, that the lead investigator requested Significant Time. This was a plea without recommendations, The Prosecutor stated this significant time issue 3 times, making it a recommendation.

[Doc. 1.]

As stated, on August 16, 2013, Respondent filed a motion for summary judgment. [Doc. 22.] On October 8, 2013, Petitioner filed a response in opposition. [Doc. 27.] On January 22, 2014, this case was stayed to allow the state court to finalize Petitioner's

second PCR application [Doc. 38], and on April 14, 2015, the stay was lifted [Doc. 53].

Respondent filed a second motion for summary judgment on May 4, 2015 [Doc. 57], and

Petitioner filed a response in opposition on May 28, 2015 [Doc. 61].    Accordingly,

Respondent's motions are ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**[4]

Petitioner brought this action pro se, which requires the Court to liberally construe

his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519,

520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon*

*v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).    Pro se pleadings are held to a less

stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520.  Even under

this less stringent standard, however, the pro se petition still may be subject to summary

dismissal. *Id.* at 520–21.  The mandated liberal construction means only that if the court

can reasonably read the pleadings to state a valid claim on which the petitioner could

prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court

may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411,

417–18 (7th Cir. 1993).    Nor should a court "conjure up questions never squarely

presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

---

[4] As previously stated, Petitioner retained counsel during the pendency of this action. [Doc. 45 (notice of appearance).]    Accordingly, the Court will liberally construe only Petitioner's pro se filings, including his Petition and response in opposition to the first motion for summary judgment.

7

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

8

preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56© has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

9

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that

court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must also

be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

jurists could disagree' on the correctness of the state court's decision," and "even a strong

case for relief does not mean the state court's contrary conclusion was unreasonable."

*Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual

determinations are presumed to be correct, and the petitioner has the burden of rebutting

this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28

U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the

Constitution or laws or treaties of the United States" and requires that a petitioner present

his claim to the state's highest court with authority to decide the issue before the federal

court will consider the claim.  *Id.*  The separate but related theories of exhaustion and

procedural bypass operate to require a habeas petitioner to first submit his claims for relief

to the state courts.  A habeas corpus petition filed in this Court before the petitioner has

appropriately exhausted available state-court remedies or has otherwise bypassed seeking

relief in the state courts will be dismissed absent unusual circumstances detailed below.

10

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)    (I) there is an absence of available State corrective process; or
> >
> > > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may

consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[5] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson*

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim. *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the Supreme Court of South Carolina is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the Supreme Court of South Carolina] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the Supreme Court of South Carolina's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

### Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at

13

any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

14

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### *Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse

a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

## DISCUSSION

As an initial matter, in his response in opposition to the second motion for summary judgment, Petitioner indicates that he wishes to narrow his allegations down to one claim of ineffective assistance of counsel; accordingly, the only issue remaining before the Court is whether Warder was ineffective for failing to object to the State's violation of the terms of the plea agreement and for failing to move for the withdrawal of Petitioner's plea due to that violation.[6] [Doc. 61 at 3].

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an

---

[6]The Court notes that this issue may not have been presented in precisely the same manner in the Petition. However, liberally construing Petitioner's pro se Petition the Court finds that this claim is contained in the grounds raised in the Petition; therefore, the Court will address the merits of this claim.

16

unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme

Court has held the "contrary to" and "unreasonable application of" clauses present two

different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth

Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses

independent meaning."). The Court stated there are two instances when a state court

decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly
> established precedent if the state court applies a rule that
> contradicts the governing law set forth in our cases. . . . A
> state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts
> that are materially indistinguishable from a decision of this
> Court and nevertheless arrives at a result different from our
> precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of

Supreme Court precedent when the decision "correctly identifies the governing legal rule

but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see*

*also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what

arguments or theories supported or, as here, could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that

those arguments or theories are inconsistent with the holding in a prior decision of this

Court. . . . It bears repeating that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to

or an unreasonable application of Supreme Court precedent unless applicable Supreme

Court precedent exists; without applicable Supreme Court precedent, there is no habeas

relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart*

*v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597

(7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

Here, Petitioner argues Warder was ineffective for failing to object to the solicitor's

following statement:

> Your Honor, one last thing I wanted to put on the record, the
> fact that the State is making no recommendation, I did not want
> that in any way to reflect that the State does not believe this
> deserves very significant time. The defense did not want the
> State's recommendation in this case and asked to go without
> it. But the State naturally would be requesting very significant
> time on this case.

[Doc. 61 at 5.] Petitioner argues this statement amounted to a recommendation in violation

of the plea agreement, and Warder should have objected and withdrawn Petitioner's guilty

plea. [*Id.*] The Court concludes Petitioner is not entitled to federal habeas corpus relief

based upon this allegation.

When evaluating a habeas petition based on a claim of ineffective assistance of

counsel, assuming the state court applied the correct legal standard—the Supreme Court's

holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is

whether the state court's application of the *Strickland* standard was unreasonable. This is

different from asking whether defense counsel's performance fell below *Strickland*'s

standard."[7]  *Richter*, 131 S.Ct. at 785. "A state court must be granted a deference and

---

[7]In *Strickland v. Washington*, the United States Supreme Court established that to
challenge a conviction based on ineffective assistance of counsel, a prisoner must prove
two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced
as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, a prisoner must show that
"counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.
To satisfy the second prong, a prisoner must show that "there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the proceeding would have been
different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance

18

latitude that are not in operation when the case involves review under the *Strickland*
standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial
review of counsel's performance is "doubly deferential when it is conducted through the
lens of federal habeas"). Even if a state court decision questionably constitutes an
unreasonable application of federal law, the "state court's determination that a claim lacks
merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the
correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough
v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must

---

must be highly deferential," and "[b]ecause of the difficulties inherent in making the
evaluation, a court must indulge a strong presumption that counsel's conduct falls within
the wide range of reasonable professional assistance." *Id.* at 689.

In the specific context of a guilty plea, to satisfy the prejudice prong of *Strickland*,
a prisoner must show that "there is a reasonable probability that, but for counsel's errors,
[the prisoner] would not have pleaded guilty and would have insisted on going to trial." *Hill
v. Lockhart*, 474 U.S. 52, 59 (1985). The Supreme Court further explained,

> In many guilty plea cases, the "prejudice" inquiry will
> closely resemble the inquiry engaged in by courts reviewing
> ineffective-assistance challenges to convictions obtained
> through a trial. For example, where the alleged error of
> counsel is a failure to investigate or discover potentially
> exculpatory evidence, the determination whether the error
> "prejudiced" the defendant by causing him to plead guilty rather
> than go to trial will depend on the likelihood that discovery of
> the evidence would have led counsel to change his
> recommendation as to the plea. This assessment, in turn, will
> depend in large part on a prediction whether the evidence likely
> would have changed the outcome of a trial. . . . As we
> explained in *Strickland v. Washington*, *supra*, these predictions
> of the outcome at a possible trial, where necessary, should be
> made objectively, without regard for the "idiosyncrasies of the
> particular decisionmaker." *Id.*, 466 U.S., at 695, 104 S.Ct., at
> 2068.

*Hill*, 474 U.S. at 59–60.

19

determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court addressed Warder's performance under the standard set forth in *Strickland* and *Hill v. Lockhart*, 474 U.S. 52 (1985). [App. 78.] The PCR court found,

> the Applicant failed to meet his burden of proving plea counsel should have objected to a violation of the plea agreement. Plea counsel testified the plea recommendation from the State was that the Applicant would plead guilty without a recommendation and the State would nol pros additional charges. This was the recommendation recited at the plea hearing. (Plea transcript, p.14; p.25). Plea counsel testified he explained to the Applicant that he could receive anything between the minimum and maximum sentence on each charge. While the Applicant stated he believed the sentence he received was too harsh, he had been properly advised of the maximum sentences he could receive on the charges. See Roddy v. State, 339 S.C. 29, 36, 528 S.E.2d 418, 422 (2000) ("Wishful thinking regarding sentencing does not equal a misapprehension concerning the possible range of sentences, especially where one acknowledges on the record that one knows the range of sentences and that no promises have been made."). This Court notes that, while the Applicant pled guilty without a sentence recommendation, the assistance solicitor stated at the plea hearing that the police officer in this case wanted the Applicant to receive "significant time." (Plea transcript; p.27). The assistant solicitor later said "[t]he defense did not want the State's recommendation in this case and asked to go without it. But the State naturally would be requesting very significant time on this case." (Plea transcript, pp.34–35). This Court finds plea counsel was not obligated to have made an objection. This Court finds the plea recommendation from the State was not violated because the assistance solicitor did not request a specific sentence or make a specific recommendation. Rather, the assistant solicitor merely echoed the request of the investigating officer. The plea recommendation was not violated because the assistant solicitor did not make a sentence recommendation, the Applicant had been advised of the possible sentences he could

> receive, and plea counsel asked the plea judge to be lenient in sentencing.
>
> ***
>
> Accordingly, this Court finds the Applicant has failed to prove the first prong of the <u>Strickland</u> test—that plea counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that plea counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of <u>Strickland</u>— that he was prejudiced by plea counsel's performance.

[*Id.* at 80–81 (footnote omitted).] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* and *Hill* standard, which is the applicable Supreme Court precedents. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court concluded Petitioner failed to establish both that Warder had not rendered reasonable effective assistance under prevailing professional norms and that Petitioner was prejudiced as a result of his representation. [*Id.* at 81.]

Further, the record supports the PCR court's determination. Petitioner was told, through a certified interpreter,[8] during his guilty plea, that he "face[d] a maximum of 90 years." [*Id.* at 11:15–16.] Petitioner stated that he understood that he would not be eligible for parole. [*Id.* at 13:1–11.] Both Warder and the solicitor acknowledged that there was no

---

[8] *See* Docket Entry Number 36-6 (letter confirming Teresa Sampson is a certified Spanish interpreter).

recommendation of any particular time, but that some charges had been dismissed. [*Id.* at 16:1–9.] At the PCR hearing, Warder testified that he had explained to Petitioner that the judge could sentence him to anything between the maximum and the minimum [*id.* at 67:12–15]; and Petitioner acknowledged that Warder had made no promises to him regarding his sentence [*id.* at 71:13–15].[9] Accordingly, the record supports the PCR court's determination that Petitioner failed to demonstrate either prong of the *Strickland* standard.[10]

------------------

[9]Petitioner testified at the PCR hearing that Warder had not explained to him that the State would not make a recommendation [App. 70:12–14] and that he would have asked for a jury trial if he had known the State would ask for a long sentence [*id.* at 71:7–12]. However, the PCR judge found that Petitioner was not a credible witness and that Warder's testimony was credible. [App. 79.] The PCR court's determination with respct to credibility is entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." (citing 28 U.S.C. § 2254(e)(1))).

[10]The Court notes Petitioner mainly relies on *Santobello v. New York*, 404 U.S. 257 (1971), and *United States v. Brown*, 500 F.2d 375 (4th Cir. 1974), to support his proposition that the solicitor breached her duty; however, the Court finds the present facts are distinguishable from those cases. In *Santobello*, the Supreme Court determined that a prosecutor had unequivocally breached a plea agreement when the parties had agreed the prosecutor would not make a sentence recommendation and, at trial, a second prosecutor argued for the maximum sentence. 404 U.S. at 262–63. There, the second prosecutor was not aware of the plea agreement, and he made a direct recommendation for the maximum time. *Id.* at 259, 262. Here, the solicitor acknowledged that she was not making a recommendation and merely stated that the State believed this case deserved significant time and, if she were making a recommendation, she would be requesting significant time on this case but did not make a specific sentence recommendation. [App. 36:20–25, 37:1–4.]

    In *Brown*, the Fourth Circuit Court of Appeals held that a prosecutor breaches a plea agreement by failing to affirmatively advocate for a sentence recommendation. 500 F.2d at 377. However, the holding in *Brown* has since been repudiated by the Supreme Court. *See United States v. Benchimol*, 471 U.S. 453, 455 (1985) (finding that the State is not required to "enthusiastically" recommend a sentence unless it has agreed to do so); *see also United States v. Rudi*, 453 Fed.Appx. 290, 294 (4th Cir. 2011) (citing *Benchimol* for the proposition that the State is not required to do more than state its recommended sentence unless it had agreed to "enthusiastically" recommend the sentence). Accordingly, the rulings in *Santobello* and *Brown* are not controlling in this case.

Thus, the Court concludes the PCR court's decision was neither contrary to nor an unreasonable application of applicable Supreme Court precedent, and, accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motions for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin
United States Magistrate Judge

June 29, 2015
Greenville, South Carolina